UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ROBERT PETTY,

        Plaintiff,

v.

NANCY A BERRYHILL, Acting Commissioner of Social Security,

        Defendant.

CASE NO. 3:17-CV-05129-JLR-DWC

REPORT AND RECOMMENDATION

Noting Date: August 25, 2017

Plaintiff Robert Petty filed this action, pursuant to 42 U.S.C. § 405(g), for judicial review of Defendant's denial of his application for supplemental security income ("SSI").[1] The District Court has referred this action, filed pursuant to 42 U.S.C. § 405(g), to United States Magistrate Judge David W. Christel.

---

[1] In the conclusion of Plaintiff's Opening Brief, he also asserts the ALJ's decision to deny his application for disability insurance benefits ("DIB") contains errors of law and this Court should remand for "a full and fair consideration." See Dkt. 11 at 11. In denying Plaintiff's DIB application, the ALJ found the record devoid of any treatment record or medically determinable impairment prior to December 31, 2001, the date Plaintiff last met the insured status requirement of the Social Security Act. Dkt. 9, Administrative Record ("AR") 23. Plaintiff does not dispute this finding. See Dkt. 11, 13. Therefore, the undersigned recommends this Court construe Plaintiff's appeal as an appeal only of his denied SSI application and not of his denied DIB application.

After considering the record, the undersigned concludes the Administrative Law Judge ("ALJ") erred when he failed to properly consider the medical opinion evidence of treating physician Dr. Vigeland. Had the ALJ properly evaluated the medical opinion evidence, the residual functional capacity ("RFC") may have included additional limitations. Therefore, the ALJ's error is harmful and the undersigned recommends the Court vacate the Commissioner's final decision in its entirety and remand this matter pursuant to sentence four of 42 U.S.C. § 405(g) for a *de novo* hearing consistent with this Report and Recommendation.

## FACTUAL AND PROCEDURAL HISTORY

On December 19, 2012, Plaintiff filed an application for DIB and SSI, alleging disability as of December 31, 1999. AR 21. The application was denied upon initial administrative review and on reconsideration. AR 21. Plaintiff filed a written request for a hearing on November 26, 2013. AR 21.

ALJ Vadim Mozyrsky heard the matter on March 24, 2015. *See* AR 39–64. In a decision dated July 7, 2015, the ALJ determined Plaintiff to be not disabled. *See* AR 21–33. The Appeals Council denied Plaintiff's request for review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. *See* AR 1–9; 20 C.F.R. §§ 404.981, 416.1481.

In Plaintiff's Opening Brief, he maintains the ALJ erred by: (1) rejecting the opinion of treating physician Dr. Ted Vigeland, M.D.; (2) failing to fully develop the record by ordering a consultative physical examination of Plaintiff; and (3) omitting a limitation from the residual functional capacity ("RFC") assessment to account for Plaintiff's cane use. *See* Dkt. 11, p. 1.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by

substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

DISCUSSION

**I. Whether the ALJ properly weighed the medical opinion evidence.**

Plaintiff contends the ALJ erred in his evaluation of the medical opinion evidence of treating physician Dr. Vigeland. Dkt. 11 at 3–7; Dkt. 13 at 3–4. Defendant asserts Plaintiff is simply asking for a different interpretation of the evidence within the record. Dkt. 12 at 11.

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (*citing Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). When a treating or examining physician's opinion is contradicted, the opinion can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830–31 (*citing Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995)); *see also Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) ("Substantial evidence means more than a mere scintilla but less than a preponderance. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (internal quotations omitted). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (*citing Magallanes*, 881 F.2d at 751).

Dr. Vigeland completed a clinician's report of disability of Plaintiff on June 18, 2014. AR 227–30. Therein, he conducted a physical examination of Plaintiff and opined Plaintiff was physically able to return to work with limitations of no stooping and no climbing, and with a

lifting restriction of twenty pounds. AR 227. Dr. Vigeland further indicated "time loss" was "authorized" from June 18 to July 16, 2014, and that Plaintiff should return for another appointment in one month. AR 227.

In his decision, the ALJ gave this opinion little weight, stating:

> The undersigned assigns limited weight to this opinion because (1) Dr. Vigeland did not indicate that this is a permanent work restriction. (2) Dr. Vigeland's opinion is inconsistent with the stable condition he reported at Exhibits 4F and 14E) [sic]. Most importantly, (3) Dr. Vigeland's opinion is inconsistent with claimant's school activity as well as the insignificant findings the recent radiographical and physical examinations showed at Exhibits 4F and 5F. Specifically, Dr. Vigeland's opinion regarding the claimant's preclusion from stooping as well as 20 pounds lifting and carrying restriction is inconsistent with the 60 pound tools the claimant has to carry around in school and engage in [sic] welding activities in school. The claimant reported no limitation regarding his inability to stoop. Finally, (4) the jobs which [sic] the vocational expert mentioned in his testimony do not require climbing ladders, ropes, or scaffolding.

AR 31 (numbering added).

The ALJ's first reason to give Dr. Vigeland's opinion little weight, that Dr. Vigeland did not indicate his opined limitations are permanent, is not a specific and legitimate reason to discount the opinion. Defendant maintains, citing *Carmickle v. Commissioner, Social Security Administration*, an ALJ may reject opinions of temporary limitations because they have little bearing on a claimant's long-term functioning. Dkt. 12 at 5; *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155 (9th Cir. 2008). In *Carmickle*, the Ninth Circuit affirmed the ALJ's decision to give little weight to a treating physician's opined limitation when the physician gave the plaintiff a two-week excuse from work due to degenerative disc disease, and two months later released the plaintiff to return to full-time work. *Id.* at 1165.

In the present case, Dr. Vigeland's opinion indicated the time loss authorization for his opined limitations was for one month. AR 227. He also indicated Plaintiff was to return for another appointment at that time. AR 227. The treatment notes show Plaintiff returned for

another appointment with Dr. Vigeland on July 16, 2014. AR 626. At that time, Dr. Vigeland opined Plaintiff was "doing well," with a "normal gait" and was "OK to discharge to routine prn followup." AR 626. However, Dr. Vigeland lifted none of his previously opined limitations or stated said limitations were temporary. AR 626. The ALJ does not cite, nor does the Court find, any evidence in Dr. Vigeland's opinion or elsewhere in the record where he stated his opined limitations were temporary, or where he lifted some or all of his opined limitations. Because substantial evidence in the record does not support a finding that Dr. Vigeland's opined restrictions and limitations were temporary, this reason to discount Dr. Vigeland's opinion is not specific and legitimate.

The ALJ's second reason to give Dr. Vigeland's opinion little weight, that it is inconsistent with "the stable condition he reported at Exhibits 4F and 14E," is also not a specific and legitimate reason to discount the opinion. AR 31. Discrepancies between a doctor's functional assessment and his clinical notes, recorded observations, and other comments regarding a claimant's capabilities "is a clear and convincing reason for not relying" on the assessment. *Bayliss*, 427 F.3d at 1216; *see also Weetman v. Sullivan*, 877 F.2d 20, 23 (9th Cir. 1989). However, an ALJ's written decision must state reasons for disregarding significant, probative evidence. *See Flores v. Shalala*, 49 F.3d 562, 571 (9th Cir. 1995). As the Ninth Circuit has stated:

> To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim. The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.

*Embrey*, 849 F.2d at 421–22 (internal footnote omitted).

1       Here, the ALJ provided a conclusory statement finding Dr. Vigeland's opinion inconsistent with his reports in the opinion and treatment notes. AR 31. The ALJ failed to identify and discuss the specific evidence contained within the 605-page Portland Veterans' Affairs Medical Center ("VAMC") treatment records (Exhibit 4F) or Dr. Vigeland's opinion (14E) that he relied on to conclude Dr. Vigeland reported that Plaintiff's condition was stable. AR 31. Further, the ALJ has failed to explain how Dr. Vigeland's opinion is contradicted by these findings. The ALJ's vague, conclusory reference to Dr. Vigeland's reports of Plaintiff's "stable condition" in the treatment notes and opinion does not reach the level of specificity necessary to justify rejecting the opinion and is insufficient for this Court to determine if the ALJ properly considered the evidence. Without more, the ALJ has failed to meet the level of specificity required to reject a physician's opinion. *See McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989) (an ALJ's rejection of a physician's opinion on the grounds that it was contrary to clinical findings in the record was "broad and vague, failing to specify why the ALJ felt the treating physician's opinion was flawed."). Therefore, this is not a specific and legitimate reason for discounting Dr. Vigeland's opinion.

      The ALJ's third reason for discounting Dr. Vigeland's opinion is that it is inconsistent with claimant's school activity as well as "the insignificant findings" contained in "the recent radiographical and physical examinations showed at Exhibits 4F and 5F." AR 31. Specifically, the ALJ discounts Dr. Vigeland's opined stooping, lifting, and carrying restrictions because they are "inconsistent with the 60 pound tools the claimant has to carry around in school" and use during welding activities, and because Plaintiff did not report a stooping limitation. AR 31.

      The ALJ's initial conclusory statement finding Dr. Vigeland's opinion inconsistent with Plaintiff's school activity as well as "the insignificant findings" contained in "the recent

radiographical and physical examinations" does not reach the level of specificity necessary to justify rejecting the opinion. *See McAllister*, 888 F.2d at 602; *see also Blakes ex rel. Wolfe v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003) ("We require the ALJ to build an accurate and logical bridge from the evidence to [his] conclusions[.]").

The ALJ also supports his third reason for discounting Dr. Vigeland's opinion with two specific rationales. The ALJ's first rationale for discounting Dr. Vigeland's opined restrictions is because they are "inconsistent with the 60 pound tools the claimant has to carry around in school" and use during welding activities. AR 31. However, this statement is not supported by the record. At the time of the hearing, Plaintiff attended Clark College in Vancouver, Washington. *See* AR 44. Plaintiff testified he was enrolled at Clark College in a "modified welding program" working towards a degree in "welding technology." AR 46. With regard to Plaintiff's school activity abilities, Plaintiff testified that during class, he would utilize one of three welding booths set up in the quieter section of the welding shop. AR 47. He further testified that a " fellow vet" who had previously volunteered to help Plaintiff would carry his welding tools for him and place the tools in his booth before he arrived. AR 47, 53–54. When the ALJ asked how much the tools weigh, Plaintiff responded, "sixty pounds." AR 54. The ALJ replied, "[o]kay. So that would be too much." AR 54.

In giving little weight to Dr. Vigeland's opined limitations, the ALJ relied on the above testimony only to the extent that it established that Plaintiff's welding tools weigh sixty pounds. AR 31. Elsewhere in the decision, the ALJ disregarded the remainder of this testimony because he found "no evidence in the record" to support Plaintiff's testimony that he receives special accommodation at the welding class due to his alleged disability, and further found Plaintiff's

testimony to be not fully credible due to various "inconsistencies [and] deficits" in the record. AR 30–31.

However, in discounting Dr. Vigeland's opined limitations, the ALJ failed to discuss any evidence that affirmatively supports the ALJ's conclusion that Plaintiff is able to carry and use his sixty-pound welding tools in school and during welding activities. AR 31. Accordingly, the undersigned concludes even if the ALJ properly set aside Plaintiff's subjective testimony, his finding that Plaintiff is able to carry and use his sixty-pound tools is not supported by substantial evidence. *See Embrey*, 849 F.2d at 421–22 ("it is incumbent on the ALJ to provide detailed, reasoned, and legitimate rationales for disregarding the physicians' findings[;]" conclusory reasons do "not achieve the level of specificity" required to justify an ALJ's rejection of an opinion). Therefore, this rationale for discounting Dr. Vigeland's opined stooping, lifting, and carrying limitations is invalid.

The ALJ's second rationale for discounting Dr. Vigeland's opined restrictions for inconsistencies with Plaintiff's school activity and "the recent radiographical and physical examinations" is that Plaintiff reported no inability to stoop. AR 31. The ALJ is entitled to resolve conflicts in the medical evidence. *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987). He may not, however, substitute his own opinion for that of qualified medical experts. *Doane v. Astrue*, 2010 WL 3672411, at *4 (W.D. Wash. Aug. 17, 2010), *report and recommendation adopted*, 2010 WL 3672357 (W.D. Wash. Sept. 15, 2010).

In rejecting Dr. Vigeland's opined stooping limitation, the ALJ does not discuss specific evidence in the record that illustrates Plaintiff is able or unable to stoop, nor discuss Dr. Vigeland's clinical observations that led to his conclusion that Plaintiff cannot stoop. AR 31. The ALJ's vague, conclusory reason to reject Dr. Vigeland's opined limitation does not reach the

level of specificity necessary to justify rejecting the opinion and is insufficient for this Court to determine if the ALJ properly considered the evidence. Without more, the ALJ's third reason to reject Dr. Vigeland's opinion has failed to meet the level of specificity required to reject a physician's opinion. *See Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) ("[t]he ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.") (*citing Embrey*, 849 F.2d at 421–22).

Finally, the ALJ's fourth reason to reject Dr. Vigeland's opinion is that the jobs the vocational expert listed in his testimony do not require climbing ladders, ropes, or scaffolding. AR 31. In discounting Dr. Vigeland's opinion for this reason, the ALJ did not discuss Dr. Vigeland's findings, evidence that shows Plaintiff is able or unable to climb, or how such evidence is contrary to Dr. Vigeland's opinion. AR 31. The ALJ further failed to include this limitation when posing hypothetical questions to the vocational expert. AR 61–62. The ALJ's failure to discuss this significant, probative evidence is error. The ALJ "need not discuss all evidence presented." *Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984). However, the ALJ "may not reject 'significant probative evidence' without explanation." *Flores*, 49 F.3d at 570–71 (*quoting Vincent*, 739 F.2d at 1395). The "ALJ's written decision must state reasons for disregarding [such] evidence." *Id.* at 571. Therefore, the ALJ's failure to discuss Dr. Vigeland's opined climbing limitation and rejection of this limitation without a specific and legitimate reason is error.

"[H]armless error principles apply in the Social Security context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless, however, only if it is not prejudicial to the claimant or "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout v. Commissioner, Social Security Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see Molina*, 674

F.3d at 1115. The determination as to whether an error is harmless requires a "case-specific application of judgment" by the reviewing court, based on an examination of the record made "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Molina*, 674 F.3d at 1118-1119 (*quoting Shinseki v. Sanders*, 556 U.S. 396, 407 (2009)).

Had the ALJ included all of Dr. Vigeland's limitations in the RFC, Plaintiff may have been found disabled. For example, the jobs testified to by the vocational expert at the hearing did not have a climbing or stooping limitation. AR 61–62. The vocational expert's testimony may have changed had the ALJ included Dr. Vigeland's climbing and stooping limitations. The jobs further required Plaintiff perform at a medium exertional level. AR 62. Medium work is defined as involving the lifting of no more than fifty pounds at a time with frequent lifting or carrying of objects weighing up to twenty-five pounds. 20 C.F.R. §§ 404.1567(c), 416.967(c). The vocational expert's testimony may have changed had the ALJ included Dr. Vigeland's twenty-pound lifting limitations. Therefore, if some or all of the limitations opined by Dr. Vigeland were included in the RFC and in the hypothetical questions posed to the vocational expert, Thomas Weiford, the ultimate disability determination may have changed. Accordingly, the undersigned finds the ALJ's error is not harmless and requires reversal.

## II. Whether the ALJ erred by failing to further develop the record.

Plaintiff contends the ALJ erred by failing to fully develop the record by ordering a consultative physical examination of Plaintiff. Dkt. 11 at 7–10.

"An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001). Where the record, taken as a whole, is adequate to evaluate a claimant's alleged impairment, the ALJ's duty to develop the record is not

implicated. *See Baghoomian v. Astrue*, 319 F. App'x 563, 566 (9th Cir. 2009). One of the means available to an ALJ to supplement an inadequate medical record is to order a consultative examination, *i.e.*, "a physical or mental examination or test purchased for [a claimant] at [the Social Security Administration's] request and expense." *Reed v. Massanari*, 270 F.3d 838, 841 (9th Cir. 2001); 20 C.F.R. §§ 404.1519, 416.919. Within this regulatory framework, the Commissioner "has broad latitude in ordering a consultative examination." *Id.* (*citing Diaz v. Sec'y of Health and Human Servs.*, 898 F.2d 774, 778 (10th Cir. 1990)).

Here, the ALJ stated Plaintiff has the RFC to perform medium work except that Plaintiff should avoid concentrated exposure to airborne irritants such as gases, dusts, fumes, or odors. AR 27. Plaintiff contends the ALJ's decision that he can perform at the medium exertional level was not based on substantial evidence in the record. Dkt. 11. As discussed *supra*, the undersigned recommends the Court order the ALJ to re-evaluate this entire matter on remand, completing each step of the sequential evaluation process, which will include re-evaluating all the medical opinion evidence. Therefore, the undersigned recommends the Court decline to examine the merit of Plaintiff's consultative physical examination argument at this time, and decline to make any determination on whether or not the ALJ failed to fully develop the record. Nevertheless, as this matter is already being remanded, the undersigned recommends the Court direct the Commissioner to determine whether a consultative physical examination is warranted.

**III.   Whether the ALJ erred in omitting a limitation from the RFC assessment to account for Plaintiff's cane use.**

Plaintiff contends the ALJ erred in omitting Plaintiff's cane use limitation from the RFC assessment. Dkt. 11 at 10–11. As discussed above, the undersigned concludes the ALJ committed harmful error when he failed to properly consider the opinion of Dr. Vigeland. *See* Section I, *supra*. Should the Court agree, the ALJ will be required to reassess the RFC on

remand. *See* Social Security Ruling 96-8p ("The RFC assessment must always consider and address medical source opinions."); *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) ("an RFC that fails to take into account a claimant's limitations is defective"); *see Watson v. Astrue*, 2010 WL 4269545, *5 (C.D. Cal. Oct. 22, 2010) (finding the ALJ's RFC determination and hypothetical questions posed to the vocational expert defective when the ALJ did not properly consider a doctor's findings). Therefore, the undersigned recommends, on remand, the ALJ be directed to reconsider Plaintiff's cane use and determine if this limitation should be included in the RFC assessment.

## CONCLUSION

Based on the above stated reasons, the undersigned recommends the Court vacate the Commissioner's final decision in its entirety and remand this matter pursuant to sentence four of 42 U.S.C. § 405(g) for a *de novo* hearing consistent with this Report and Recommendation. The undersigned also recommends judgment be entered for Plaintiff and the case be closed.

Pursuant to 28 U.S.C. § 636(b)(1) and FED. R. CIV. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* FED. R. CIV. P. 6. Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on August 25, 2017, as noted in the caption.

Dated this 8th day of August, 2017.

David W. Christel
United States Magistrate Judge